Nathaniel Boyer and John Stanton [testified] to prove they received several sums of Shawn for Cloak.

Ronald Harrington. Samuel Cloak resided here two or three years at least.

*Rodney,* in his opening. If Cloak was insolvent, I contend no damages were sustained by his removal, etc.

*Ridgely* for plaintiff. We prove debts due to Shawn of £78, also several other sums. Cloak, it appears, had money when he went off.

*Vandyke* for defendant. If Cloak was insolvent, Shawn received no damage, nor can any be recovered.

*Rodney.* This is a penal statute, and the master is not liable in this action, though he may be in a civil, and even in trespass.

*Clayton.*

*Ridgely.*

PER CURIAM. This cause has been fully argued [on] points in dispute between the counsel etc. The Act they call a badge of slavery and antiquated, is improperly so called, and is now in force, and as the law of the land, is part of their evidence. The Act is not a penal law in the sense they speak of it. If Bishop by himself or his agent conveyed Cloak out, he is answerable, and the master in a civil suit is answerable for his slave to the amount of the slave. If a debt from Cloak to Shawn be proved, you may find to the amount of it, provided it appears to you Cloak was solvent to that amount.

Verdict for plaintiff £78.10.0.

### STATE v. JAMES CLARK et al.

Court of Quarter Sessions. Kent. May, 1804.

*Rodney's Notes.*

*Ridgely, Vandyke* [for State]. *Rodney, Stewart* [for defendant].

Robert, offered as a witness, and objected to by *Rodney* as not being a free man. He was left by Jehu Davis by his will to his son John after the term of five years, which is not yet expired. The counsel agreed from the recommendation of the Court to go on with the trial, and save the question whether he was to be admitted as a free black, or to be considered as a slave, to be argued and decided by the Court.

James Clark. James Milles and Enock Gabb seized, threw me, thumbed, tied me, etc.

Richard Harrington. In the evening I met Bob, was crying, said they took him for a runaway, abused him, and Milles bit his finger.

Harrison. When I went up Clark had Bob by the coat. Bob was endeavoring to get on or go on. Clark refused to let him go.

Stephen Shay. First I saw Clark and Millis had Bob down, etc. Mr. Davis came, asked why he tied him. Clark said he had a right to take any man up on suspicion.

Isaac Davis, Esq. On Monday, April 23, was alarmed after I was in bed, etc. Saw a number with Bob coming. I asked Clark and Millis what they were going to do with Bob. Clark said he had a right to take any Negro up. I was going to untie Bob, but Milles seemed to object.

*Rodney* for Clark. The grounds of our defense: Richard Cooper had lost some meat, and called upon Clark to look out for suspicious persons. And [Clark] enquired who he was, wanted to take him before a justice. Bob resisted and Clark called upon others to assist him.

Richard Cooper, Esq. I had my smokehouse broke and lost some meat on the night of the 24th. On Tuesday, 25th, I came to town, spoke to Clark to look out.

N. Maxwell. Clark inquired if he was not runaway, if he had a pass, etc.

*H. Ridgely.* The arrest was unlawful being without authority, or any warrant.

*Stewart.* 4 Bl.Comm. 1 Del.Laws 212.

*Rodney.* We rely chiefly on the legal ground that Clark under the Act had a right to take up Bob as a suspicious person.

Attorney General. Constables, etc. by the common law may arrest for felony, etc., without warrant. I contend the offense is not justified by evidence or law.

PER CURIAM. First, that when a person arrests another without a pass it is at their own peril; second, if no felony committed before the arrest no justification that the person is an officer, etc.

Verdict, guilty.

## STATE v. JAMES HILL and JOSEPH HILL.

Court of Quarter Sessions. Kent. May, 1804.

*Rodney's Notes.*

*Vandyke* [for State]. *Fisher* [for defendants].

Philip Denny. At November Term but in December, 1802, James Gordon and me after night started from Dover. At Hillyards he left me at the woods. I overtook James walking and Thomas riding. Mr. Marim came up, and Thomas Hill began to curse me, and after began beating me with his whip etc. Further on I met John Hill. He and James encouraged Thomas to beat me well. I set off [on] my horse. He overtook me, got down, and tried to pull me off my horse. James, John, and Joseph Hill and J. Gordon came up, set, and looked at Thomas beating me and would not let me go. James I believe at length called to Thomas to quit beating me and he did.

John Marim.

John W. Whorter. Thomas Hill said for a quart spirits he would prevent him. John said that should not be wanting. James and Joseph were present at same time in jail.

John Boyer, Joshua Jefferson, Thomas Comerford, etc.

*Fisher, Rodney* and *Vandyke* argued the cause.

PER CURIAM. If one person commits an assault and battery, and another stands by and expressly encourages him, the last is guilty of the assault and battery.

Verdict, not guilty.